IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHANIE RAEL,

        Plaintiff,

vs.                                           1:17-cv-00406-LF

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Stephanie Rael's Motion to Reverse/ Remand and Memorandum in Support of the Same (Doc. 23), which was fully briefed on February 5, 2018. Docs. 25, 26, 27. The parties consented to my entering final judgment in this case. Docs. 5, 8, 9. Having meticulously reviewed the record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that her decision is supported by substantial evidence. The Court therefore DENIES Ms. Rael's motion and dismisses this case with prejudice.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1581, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted ) (brackets in original).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*.

### III. Background and Procedural History

Ms. Rael is a 51-year-old single woman with an eighth-grade education.[3] AR 39, 72, 139.[4] Ms. Rael lives with a friend, her two minor daughters, and her grown son. AR 40, 140. Ms. Rael's son receives disability benefits, and she is the payee for her son's benefits. AR 40. Ms. Rael filed an application for Supplemental Security Income on February 19, 2013, alleging

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] There is a discrepancy in the record as to whether Ms. Rael has an eighth-grade or a tenth-grade education. *Compare* AR 39 *with* AR 160. Plaintiff does not argue, however, that this discrepancy in the record constitutes reversible error.

[4] Document 17-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

disability beginning January 1, 1998, due to a personality disorder, panic attacks, bipolar disorder, post-traumatic stress disorder ("PTSD"), and asthma. AR 139–47, 159. The Social Security Administration ("SSA") denied her claims initially and on reconsideration. AR 71–95. Ms. Rael requested a hearing on January 27, 2014. AR 68–70, 105–06. On August 28, 2015, ALJ Michelle Lindsay held a hearing, at which Ms. Rael and a vocational expert ("VE") testified. AR 28–67. Although informed of her right to representation, Ms. Rael chose to appear and testify without the assistance of an attorney or other representative. AR 30–33, 138. ALJ Lindsay issued her unfavorable decision on February 24, 2016. AR 11–27.

At step one, the ALJ found that Ms. Rael had not engaged in substantial, gainful activity since February 19, 2013,[5] the application date. AR 16. Because Ms. Rael had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. *Id.* At step two, the ALJ found that Ms. Rael had the following severe impairments: "major depressive disorder without psychosis, and generalized anxiety disorder." AR 16. The ALJ also found at step two that Ms. Rael's asthma and obesity were non-severe impairments. AR 16–17. At step three, the ALJ found that none of Ms. Rael's impairments, alone or in combination, met or medically equaled a Listing. AR 17–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Rael's RFC. AR 19–22. The ALJ found that:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to understanding, remembering, and carrying out simple instructions. She is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task. She can have only occasional public contact. She can have only superficial interactions with co-workers and supervisors. She requires work involving no more than occasional change in the routine work setting.

---

[5] The ALJ's decision notes the date of Ms. Rael's application as February 12, 2013. AR 14. The Court presumes this is a typographical error because Ms. Rael's application is dated February 19, 2013. AR 139–47.

4

AR 19.

At step four, the ALJ found that Ms. Rael had no past relevant work and, therefore, transferability of job skills was not an issue. AR 22. The ALJ found that Ms. Rael was not disabled at step five. Relying on the VE testimony, the ALJ concluded that Ms. Rael still could perform jobs that exist in significant numbers in the national economy—such as a cleaner/housekeeper, a bakery worker/conveyor line, and a motor polarizer. AR 22–23. Ms. Rael requested review by the Appeals Council, which denied the request on January 31, 2017. AR 1–5, 8–9. Ms. Rael timely filed her appeal to this Court on April 3, 2017. Doc. 1.[6]

**IV.    Ms. Rael's Claims**

Ms. Rael raises three main arguments for reversing and remanding this case: (1) that the ALJ erred in finding that Ms. Rael's asthma was non-severe; (2) that the ALJ failed to develop the record about Ms. Rael's impairments; and (3) that the VE testimony is inconsistent with the RFC. Doc. 23 at 1, 6–11. Ms. Rael also presents sub-issues and arguments which are poorly developed. For example, in plaintiff's "Procedural History and Sequential Evaluation" section, she argues that the ALJ failed to develop the record with regard to Ms. Rael's obesity. Doc. 23 at 4. Ms. Rael, however, presents no legal authority or argument that establishes that the ALJ's findings with respect to plaintiff's obesity are not supported by substantial evidence or that the ALJ failed to apply the correct legal standards. *See generally* Doc. 23. Ms. Rael further asserts that the ALJ failed to "mention or consider" several specific treatment notes regarding her anxiety. Doc. 23 at 5. Again, however, Ms. Rael does not present any legal authority or

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2–3.

argument that establishes how this failure was error.[7] The Court will consider and discuss only the contentions that have been adequately briefed. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir.2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal.")).

V. **Discussion**

   A. The ALJ's Step-Two Findings

      1. *The ALJ's Finding that Ms. Rael's Asthma was Non-Severe*

Ms. Rael contends that "the ALJ's holding that plaintiff's asthma was non-severe is contrary to the substantial evidence and is based on improper baseless inferences about smoking." Doc. 23 at 6. Ms. Rael's step-two argument fails as a matter of law.

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §[§] 404.1520(c)[,] [416.920(c)]. A claimant must make only a de minimis showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. §[§] 404.1520(a)(4)(ii)[,] [416.920(a)(4)(ii)] (emphasis added). By its plain terms, the regulation requires a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id*. (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is

---

[7] It appears that any such argument would be without merit. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Here, it is clear from the record that the ALJ considered evidence that Ms. Rael suffered from anxiety. The ALJ found Ms. Rael's anxiety was a severe impairment at step two, and included non-exertional limitations in Ms. Rael's RFC to accommodate her anxiety symptoms.

6

not reversible error when the ALJ finds that at least one other impairment is severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found that two other impairments—major depressive disorder and anxiety disorder—were severe, and proceeded through the other steps in the sequential evaluation process. AR 16–23. Thus, the ALJ's failure to find Ms. Rael's asthma was severe at step two is not reversible error and does not warrant remand.

2. *The ALJ's Inference Regarding Smoking*

Ms. Rael next argues that the ALJ "improperly and unfairly" inferred that the plaintiff was a smoker at the time of her hearing. Doc. 23 at 9. The ALJ found that Ms. Rael's asthma was non-severe in part because "[a]dditionally, I cannot ignore the fact that the claimant continues to smoke." *Id*. (quoting AR 17). Ms. Rael criticizes the ALJ for not asking her at the hearing whether she continued to smoke. *Id.* Ms. Rael fails to recognize, however, that the evidence in the record indicates that although she suffered from asthma, she did, in fact, continue to smoke, regardless of whether she was a smoker at the time of the hearing. Medical records show that in 2014, Ms. Rael suffered from asthma while at the same time, "[s]he continues to smoke." Doc. 262. Although the ALJ did not ask Ms. Rael at the hearing in 2015 whether she still smoked, evidence in the record indicated that Ms. Rael continued to smoke despite suffering from asthma.

Regardless, the ALJ gave several reasons for finding that Ms. Rael's asthma was non-severe beyond the fact that she "continued to smoke." The ALJ noted that Ms. Rael gets asthma attacks "once every few months," which she treats with an inhaler and nebulizer treatments. AR 16. The ALJ also noted that Ms. Rael did not report any hospitalizations due to asthma within a year, and that Ms. Rael's "asthma appears to be well controlled as long as she takes all her

7

medications." AR 16–17.  Moreover, Ms. Rael has the burden to ensure there is evidence in the record "sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  Further, Ms. Rael does not dispute the ALJ's determination that "there is no evidence to support a finding that [asthma] impairs the claimant's ability to engage in work activity."  AR 17; *see also Howard v. Barnhart*, 379 F.3d 945, 947–48 (10th Cir. 2004) (finding substantial evidence supported the ALJ's factual finding where the claimant did not argue that other symptoms or functional limitations were caused by her heart condition and chest pain was controlled with medication).  Accordingly, the ALJ's finding that Ms. Rael's asthma was non-severe is supported by substantial evidence.  The ALJ's failure to ask at the hearing whether Ms. Rael continued to smoke is not reversible error.

    B.  <u>Failure to Develop the Record</u>

Ms. Rael's primary complaint is that the ALJ failed to develop the record.  "The burden to prove disability in a social security case is on the claimant." *Hawkins*, 113 F.3d at 1164. "Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164).  Generally, this means that the "ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996).  Moreover, the ALJ's "duty is heightened" when a claimant, like Ms. Rael, appears before the ALJ without counsel.  *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992) (same); *see also Dixon v.*

*Heckler,* 811 F.2d 506, 510 (10th Cir.1987) ("The [ALJ's] duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel.").

The duty is one of inquiry—to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Henrie*, 13 F.3d at 361. The length of the hearing is not as relevant as the information gathered. *Thompson v. Sullivan*, 987 F.3d 1482, 1492 (10th Cir. 1993). "The important inquiry is whether [sufficient questions were asked] to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Id*. (internal citation and quotation marks omitted) (brackets in original). The duty to develop the record "is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). "The standard is one of reasonable good judgment. The duty to develop the record is limited to fully and fairly develop[ing] the record as to material issues." *Hawkins*, 113 F.3d at 1162 (quotations omitted) (brackets in original).

The ALJ fulfilled her duty of inquiry in this case. At the hearing, the ALJ ascertained the nature of Ms. Rael's impairments and what on-going treatment and medications Ms. Rael was receiving. The ALJ first ensured that she had all of Ms. Rael's medical records. AR 36–38. When Ms. Rael advised that she was being treated by Dr. Umland at Family Practice University Hospital, the ALJ assured Ms. Rael that she would obtain records from "UNMH," which she did. AR 37, 256–75. The ALJ ascertained what medications Ms. Rael was taking, and what the medications were for, including medications for asthma, anxiety, and nightmares. AR 43–45. The ALJ discussed Ms. Rael's anxiety, panic attacks, and depression with her. AR 45–47, 54. The ALJ then ascertained the impact of the alleged impairment on Ms. Rael's daily routine and

activities. Ms. Rael and the ALJ had a lengthy discussion about the activities Ms. Rael typically performs on a normal day. AR 47–54. Accordingly, the ALJ fulfilled her duty to ensure that an adequate record was developed during the disability hearing consistent with the issues raised.

Ms. Rael contends that the ALJ failed to develop the record by failing to inquire about the limitations caused by her asthma or ask her why her testimony was different from the representations in her Asthma Questionnaire. Doc. 23 at 8; Doc. 26 at 2–3. The ALJ did not have a duty to exhaust this line of questioning. The ALJ had a lengthy discussion with Ms. Rael about her daily activities. During that discussion, Ms. Rael did not indicate that her asthma limited her ability to maintain a household, care for her children, perform household chores, prepare meals, get her kids ready for school, help with homework, use public transportation, attend to personal hygiene, shop for groceries, and walk with her son to the park. AR 17–18, 47–54. The ALJ noted that Ms. Rael had no hospitalizations for asthma within a year. AR 16. The medical records did not indicate that Ms. Rael suffers any limitations due to asthma. While Ms. Rael reported that it takes her "a couple of days" to recover from an asthma attack, AR 178, "[i]solated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a[n] . . . impairment." *Hawkins*, 113 F.3d at 1165.

Ms. Rael next criticizes the ALJ for failing to inquire about how her weight affects her ability to do work activities. Doc. 23 at 4; Doc. 26 at 3. Ms. Rael contends that the ALJ failed to acknowledge the documentary evidence that obesity impaired her ability to work and failed to question her about it in any meaningful way. *Id.* She further argues that additional inquiry was necessary because she testified that her doctor told her that she would not be around to see her daughters grow up because of her weight, AR 50–51, and because she indicated on her

functional report that she had difficulty walking and climbing stairs, AR 174. Doc. 23 at 4; Doc. 26 at 3.

An ALJ is required to consider the effects of obesity when assessing a claimant's RFC. *See* SSR 02-1p, 2002 WL 34686281, at *1. The ALJ, however, may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but instead must "evaluate each case based on the information in the case record." *Id*. at *6. Absent record evidence that obesity resulted in additional functional limitations or exacerbated other impairments, an ALJ is not required to discuss the effects of obesity. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error where there was no evidence in the record of any functional limitations from the claimant's obesity that was inconsistent with the RFC); *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (ALJ is not required to note the absence of any evidence that obesity resulted in additional functional limitations or exacerbated any other impairments); *see also Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (ALJ did not err where the factual record did not support claimant's position that her obesity precluded her from performing a limited range of sedentary work).

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

SSR 02-1P, 2002 WL 34686281, at *6.

Here, there is no evidence in the record that Ms. Rael's obesity resulted in any functional limitations or exacerbated any other impairments. The doctor's comment—that Ms. Rael would not live to see her daughters grow up because of her weight—does not demonstrate that Ms. Rael

11

had any work-related functional limitations due to obesity. Whether a person's weight may eventually cause an early demise does not indicate whether they are able to work during their lifetime. While Ms. Rael indicated in her functional report that she had trouble walking "sometimes," AR 174, she does not challenge the ALJ's RFC finding that she can perform a full range of work at all exertional levels, AR 19.[8] Further, Ms. Rael attributed her issues with climbing stairs to "asthma," not to obesity. AR 174. Because there is no evidence in the record that Ms. Rael's obesity caused a functional limitation, the ALJ was not required to inquire further.

Ms. Rael next contends that the ALJ should have inquired into what causes her to experience stress that induces anxiety attacks. Doc. 23 at 10; Doc. 26 at 3. At the hearing, however, the ALJ asked Ms. Rael what triggered her anxiety attacks, and Ms. Rael responded, "I don't know why I have them." AR 45. Ms. Rael speculated that it could be due to her childhood and explained that when she sees something that reminds her of what happened to her as a child, that would trigger an attack. AR 45–46. Additional questions were not necessary because Ms. Rael already had explained what she thought triggered her anxiety attacks. The ALJ did not have a duty to inquire further.

Ms. Rael also argues that the ALJ should have asked her why she missed half of her appointments with Dr. Umland. Doc. 23 at 11; Doc. 26 at 3. Ms. Rael contends that the ALJ "clearly holds this against her in ruling that her testimony regarding symptoms and intensity are

---

[8] The Social Security Administration classifies work in the national economy by the exertional levels of sedentary, light, medium, heavy or very heavy. SSR 83-10, 1983 WL 31251, at *2. The levels of work are defined by the extent that they require each of the primary strength activities—sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at *2, *5. A claimant has an exertional limitation when he or she has an impairment-caused limitation that affects his or her ability to perform an exertional, or strength, activity. *Id.* at *5.

12

only partially credible." Doc. 23 at 11. Ms. Rael's argument lacks merit for two reasons. First, Ms. Rael does not specifically challenge the ALJ's credibility finding, nor does she develop the argument that the credibility finding is erroneous. The Court will consider and discuss only the contentions that have been adequately briefed. *Keyes-Zachary*, 695 F.3d at 1161.

Second, it is not clear, as Ms. Rael contends, that the ALJ based her credibility assessment on the fact that Ms. Rael kept only half of her appointments with Dr. Umland. When assessing a claimant's credibility, failure to seek treatment may be probative of severity. The ALJ, therefore, has a basic duty of inquiry to ask the plaintiff why he or she did not seek treatment, or why it was sporadic. *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1172 (D. Kan. 2012).

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. *However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.* The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186, at *7 (emphasis added) (cited with approval in *Madron v. Astrue*, 311 F. App'x 170, 178 (10th Cir. 2009)).

In this case, in addressing Ms. Rael's RFC, the ALJ summarized Dr. Umland's notes which indicated that "[s]he only keeps a half of her appointments," AR 262, and that Ms. Rael "has made appointments and canceled them the day of the visit," AR 259. AR 21. The ALJ did not, however, appear to base her credibility assessment on these specific doctor's notes. In the paragraph assessing Ms. Rael's credibility, the ALJ explains that

13

> Treatment records from her primary care provider are few and merely reveal diagnosis and treatment for routine health issues, as well as anxiety, obesity, asthma, and depression, but does not indicate that the claimant's provider believes the claimant is not able to work as outlined in the residual functional capacity, I have outlined above.

AR 21. In other words, the ALJ found that the medical evidence as a whole did not support Ms. Rael's claims. Because the ALJ did not base her credibility finding on Ms. Rael's failure to attend doctor's appointments with Dr. Umland, the ALJ was not required to ask Ms. Rael about the reasons why she failed to attend those appointments.

C. The ALJ's Step Five Findings

At step five, it is the Commissioner's burden to establish that—taking into account the claimant's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Barrett v. Astrue*, 340 F. App'x 481, 487 (10th Cir. 2009). An ALJ may use a vocational expert at step five to supply an opinion about the claimant's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

Ms. Rael contends that the VE testimony relied on by the ALJ is inconsistent with the RFC. She argues that "the jobs listed by the vocational exert all require the carrying out of detailed instructions," while the RFC limits Ms. Rael to understanding, remembering and carrying out simple instructions. Doc. 23 at 11. In her reply brief, Ms. Rael changes her argument and for the first time contends that there is a conflict between the VE testimony and the DOT that the ALJ failed to ask about. Doc. 26 at 5. Ms. Rael's first argument is without merit. The Court will not address the second argument because Ms. Rael raised it for the first time in her reply.

1. *The VE Testimony Relied on by the ALJ is Consistent with the RFC.*

Ms. Rael initially complains that the jobs identified by the VE all require a reasoning level beyond her limitations as defined in the RFC and, therefore, the ALJ improperly relied on the VE testimony at step five. Doc. 23 at 11. Ms. Rael apparently has confused a "GED Reasoning Level" and the "specific vocational preparation (SVP)" time required for each occupation.

"Agency regulations and policy direct ALJs to consider the [Dictionary of Occupational Titles ("DOT")] as the primary source of occupational information used in disability determinations." SSR 00-4p, 2000 WL 1898704, at *2; 20 C.F.R. § 416.960(b)(2); SSR 82-61, 1982 WL 31387, at *2. The reasoning level for each occupation can be found in the "Definition Trailer" following the DOT description of each occupation. For example, the definition trailer for Cleaner, Housekeeping DOT # 323.687-014 reads: "GOE: 05.12.18 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 86." https://occupationalinfo.org/32/323687014.html (last visited Dec. 13, 2018). The "general educational development," or "GED," component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L). *See* APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. All three jobs identified by the VE have a GED: R1 M1 L1.[9]

---

[9] *See* Bakery Worker, Conveyor Line DOT # 524.687-022 (GOE: 06.04.28 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 86) https://occupationalinfo.org/52/524687022.html (last visited Dec. 13, 2018); Motor Polarizer DOT # 715.687-090 (GOE: 06.04.23 STRENGTH: S GED: R1 M1 L1 SVP: 2 DLU: 77) https://occupationalinfo.org/71/715687090.html (last visited Dec. 13, 2018). Level-one reasoning development requires the ability to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Level-one mathematical development requires the ability to "add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch,

The Commissioner uses materials published by the Department of Labor—including the DOT—to classify occupations as unskilled, semi-skilled, and skilled. 20 C.F.R. § 416.968. The DOT lists an SVP time for each described occupation. Using the skill level definitions in 20 C.F.R. § 416.968, unskilled work corresponds to an SVP of 1 to 2; semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9 in the DOT. SSR 00-4p, 2000 WL 1898704, at *3.

The VE identified three occupations that a hypothetical person with Ms. Rael's age, education, work experience, and RFC could perform, including house keeper, bakery worker, and motor polarizer. Each of these jobs are listed in the DOT as having an SVP level of 2, or "unskilled work."

> Unskilled work generally requires only the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996).

*Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). The ALJ's RFC limited Ms. Rael to understanding, remembering, and carrying out simple instructions; to performing simple tasks; and limited her to work involving no more than an occasional change in the routine work setting, AR 19, all of which are consistent with unskilled work. Ms. Rael's RFC is consistent with both the GED levels and the SVP levels required by the jobs identified by the VE. The ALJ,

---

foot, and yard; and ounce and pound." *Id*. Level-one Language Development requires the skills of "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses." *Id*.

therefore, properly relied on the VE's testimony when determining the number of jobs available in the national economy at step five.

      2. *Issues Raised for the First Time in Ms. Rael's reply*.

Perhaps recognizing the difference between GED and SVP following the Commissioner's response, Ms. Rael raises a different argument in her reply brief. Ms. Rael's argument shifts from the "reasoning level" argument in her opening brief to arguing that the VE testimony conflicted with the DOT. Ms. Rael argues for the first time in her reply that the ALJ failed to ask the VE about any possible conflict between the VE's testimony and the DOT "such as changes in routine work setting." Doc. 26 at 5. The failure to raise an issue in an opening brief, however, waives that issue. *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006). The Court will not consider Ms. Rael's second argument which was raised for the first time in her reply.

## VI. Conclusion

The ALJ's failure to find that Ms. Rael's asthma was a severe impairment was not an error at step two; the ALJ fulfilled her duty to develop the record, and the ALJ did not err at step five by relying on the VE testimony to find that there were a sufficient number of jobs in the national economy that Ms. Rael could perform despite her impairments. The ALJ's decision is supported by substantial evidence, and the ALJ applied the correct legal standards. Accordingly, remand is not required in this case.

IT IS THEREFORE ORDERED that plaintiff Stephanie Rael's Motion to Reverse/Remand and Memorandum in Support of the Same (Doc. 23) is DENIED, the decision of the Commissioner is AFFIRMED, and this case is DISMISSED with prejudice.

Laura Fashing
United States Magistrate Judge
Presiding by Consent